UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NATHAN P. EBRECHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 3:04-cv-73-RLY-WGH |
| | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM DECISION AND ORDER**

Plaintiff Nathan P. Ebrecht ("Plaintiff") seeks judicial review of a final decision which found him not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(I), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the following reasons, the Administrative Law Judge's ("ALJ") decision is **remanded**.

**I. Background**

Plaintiff applied for DIB on April 4, 2001, alleging disability since November 14, 2000. (R. 53-55). Plaintiff's application was denied both initially and upon reconsideration. (R. 28-31, 33-34). Plaintiff appeared with counsel and testified at a hearing before an ALJ on July 24, 2002. (R. 332-355). Also testifying was a vocational expert. The ALJ issued a decision on November 14, 2002, finding that Plaintiff was not disabled because he was able to perform a significant number of jobs existing in the

economy. (R. 16-23). The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review on March 5, 2004. (R. 4-6). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a complaint on May 5, 2004, seeking judicial review of the ALJ's decision.

## II.  Standard of Review

The ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see also *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

## III.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**IV.  Analysis**

       Plaintiff has raised five issues for review:

       1. Whether the ALJ failed to address Plaintiff's diagnoses of orthostatic tachycardia syndrome and neurocardiogenic syncope.

       2. Whether the ALJ incorrectly concluded that Plaintiff did not meet or equal any of the listings in 20 C.F.R. Part 404 Subpart P, Appendix 1.

       3. Whether the ALJ failed to address Plaintiff's diagnoses of panic disorder with agoraphobia and incontinence.

       4. Whether the ALJ failed to consider the combined impact of all of Plaintiff's

impairments.

     5. Whether the ALJ made an improper credibility determination.

**A.    Whether the ALJ failed to address Plaintiff's diagnoses of orthostatic tachycardia syndrome and neurocardiogenic syncope**

Plaintiff's first argument is that the ALJ erred in failing to consider Plaintiff's orthostatic tachycardia syndrome and neurocardiogenic syncope as severe impairments under the Social Security Act. An impairment is severe if it significantly limits an individual's physical or mental ability to perform basic work activities and is expected to last for at least a year. SSR 96-3p.

The ALJ, in this instance, found that Plaintiff had three severe impairments, including dizziness, headaches, and depression. (R. 17). However, despite taking note of Plaintiff's diagnoses of orthostatic tachycardia syndrome and neurocardiogenic syncope, the ALJ failed to characterize either of these impairments as severe.[1]

Orthostatic tachycardia syndrome involves a rapid increase in heart rate that occurs when an individual moves from the supine (sitting down) to upright (standing up) position. Dysautonomia Information Network, *POTS Place: A Guide to Postural Orthostatic Tachycardia Syndrome*, *at* http://www.potsplace.com/pots_an_overview.htm (last visited April 14, 2005). This occurs because the autonomic nervous system in an individual with orthostatic tachycardia syndrome is not functioning properly. *Id*. The

---

[1]Plaintiff was diagnosed with neurocardiogenic syncope by Faris M. Fadheel , M.D. (R. 317). This diagnosis was confirmed by the autonomic function clinic at Vanderbilt University and an additional diagnosis of orthostatic tachycardia syndrome was made. (R. 315).

multitude of symptoms of orthostatic tachycardia syndrome include: rapid increase in heart beat, decrease in blood pressure, pooling of blood in the lower extremities, an inability to stand for long periods of time, dizziness, lightheadedness, chest and heart pain, shortness of breath, blurry vision, passing out, frequent urination, difficulty sleeping, chronic fatigue and weakness, nausea, eye pain, and memory loss. *Id*.; *See also* Christopher Calder, *Postural Orthostatic Tachycardia Syndrome: Patient's Report on Causes Symptoms and Treatment*, *at* http://home.att.net/~potsweb/POTS.html (last visited April 15, 2005).

The medical records in this case indicate that Plaintiff displayed the majority of these symptoms. On June 15, 2000, Plaintiff presented to the emergency room of the St. Mary's Medical Center with chest pains. Notes indicate that he displayed a mild fever. (R. 177). On June 16, 2000, Plaintiff was examined by John E. Polin, M.D. (R. 253-255). Dr. Polin noted chest pain, a hyperactive bladder, depression with a history of panic disorder, and hyperlipidemia. (R. 255). Records from Dr. Ehglert of the Eye Group of Southern Indiana indicate that Plaintiff suffered from blurred vision and eye fatigue. (R. 183-184).

Notes from Thomas B. Logan, M.D., dated December 6, 2000, indicate that Plaintiff suffered from "bilateral ascending pattern loss of hearing." (R. 188). Dr. Logan noted that Plaintiff's problems were indicative of a central nervous system problem and that his findings would indicate peripheral vestibular problems. (R. 188). On November 22, 2000, Dr. Logan reported that an ENG was performed that indicated central nervous

system problems. (R. 194). Records from Dr. Logan on November 29, 2000 indicate further ascending pattern loss of hearing and suggest the possibility of Meniere's disease. (R. 190).

Records indicate that Plaintiff was examined by Faris M. Fadheel, M.D., on December 15, 2000. Dr. Fadheel observed hearing loss and reported that an EMG revealed central nervous system problems. (R. 249). He also observed some eye movement problems and mild tremor. (R. 249-250). On February 9, 2001, Plaintiff underwent a Tilt Table Test conducted by Louis F. Janeira, M.D. Dr. Janeira reported that the test was positive for neurocardiogenic syncope. (R. 243).

Records from Gene R. Flick, M.D., dated April 9, 2001, indicate that Plaintiff was having difficulty sleeping and was only getting three hours of sleep per evening. (R. 204). Dr. Flick again reported on April 16, 2001, that Plaintiff was only getting two to three hours of sleep and was experiencing dizziness and running a fever of 101 to 102 degrees. (R. 204).

Records from June 8, 2001, indicate that Dr. Fadheel opined that Plaintiff was suffering from neurocardiogenic syncope. (R. 239). Dr. Fadheel reported that Plaintiff suffered from dizziness and "ringing in his ear." (R. 239). In records dated June 19, 2001, state agency physician, Dr. J. Sands, indicated that Plaintiff suffered from dizziness and frequent falls. (R. 143). On July 31, 2001, Dr. Fadheel opined that results from Plaintiff's Tilt Table Test revealed dysautonomic features and were consistent with neurocardiogenic syncope. (R. 236).

On July 31, 2001, Plaintiff underwent a psychological evaluation by Jeffrey W. Gray, Ph.D. (R. 286-290). Dr. Gray observed that Plaintiff displayed a mild impairment in ability to maintain attention and concentration, a minor impairment in short term memory, and intermediate memory that was in the low normal range. (R. 287).

Dr. Fadheel's notes from January 21, 2002, continue to note neurocardiogenic syncope and indicate that Plaintiff will undergo evaluation at Vanderbilt University's autonomic dysfunction center. (R. 317). Dr. Fadheel indicated that Plaintiff was suffering from headaches and depression. (R. 318). Finally, notes from Dr. Fadheel on March 5, 2002, indicate that Plaintiff was diagnosed with neurocardiogenic syncope and orthostatic tachycardia syndrome by the Vanderbilt autonomic dysfunction center. (R. 315).

It seems that such a disorder as orthostatic tachycardia syndrome, with its multitude of symptoms, could certainly be classified as a severe impairment. Because of the Vanderbilt diagnoses and the fact that Plaintiff has displayed virtually every symptom of orthostatic tachycardia syndrome, and because no other evidence in the record suggests that Plaintiff was not suffering from orthostatic tachycardia syndrome, the ALJ was obligated to address this disorder. An ALJ may not substitute his own judgment for the opinions of a physician without relying on specific medical evidence or authority in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). "[A]dministrative law judges of the Social Security Administration must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

Therefore, on remand, the ALJ must address Plaintiff's diagnosis of orthostatic tachycardia syndrome at Step 2 of the five-step analysis set forth in 20 C.F.R. § 416.920 and indicate whether he considered it a severe impairment.

The ALJ must also address Plaintiff's diagnosis of neurocardiogenic syncope. A syncope is the technical term for fainting. Heart Care Associates, *Neurocardiogenic Syncope*, *at* http://www.hrtcare.com/neurosyn.asp (last visited April 19, 2005). Neurocardiogenic syncope is the result of a lack of blood flow to the brain which results in loss of consciousness. *Id*. It may be caused by an arrhythmia of which tachycardia is one form, or it may be caused by a neurocardiogenic syndrome which causes blood to pool in the lower extremities resulting in low blood flow to the brain. *Id*. In this case, Plaintiff has been diagnosed with orthostatic tachycardia syndrome, which, as addressed above, can result in both a rapid heartbeat and pooling of blood in the lower extremities. Fainting periodically could be characterized as a severe impairment as it could interfere with an individual's ability to perform basic work activities. Yet, no mention was made of Plaintiff's neurocardiogenic syncope when the ALJ addressed those impairments that he considered severe. On remand, the ALJ must also consider whether Plaintiff's neurocardiogenic syncope was a severe impairment.

**B.      Whether the ALJ incorrectly concluded that Plaintiff did not meet or equal any of the listings in 20 C.F.R. Part 404 Subpart P, Appendix 1**

Plaintiff's next point of error was at Step 3 of the five-step analysis set forth in 20 C.F.R. § 404.1520, at which point the ALJ decided that Plaintiff did not meet or equal

any of the listings.  20 C.F.R. Part 404, Subpart P, Appendix 1 (also referred to as "the listings") sets forth those impairments which are regarded as presumptively disabling.  If Plaintiff satisfies his burden of demonstrating that he meets the criteria for an impairment in the listings, the inquiry would end, finding Plaintiff disabled and entitled to benefits. *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir. 1989).  In some instances, failure to specifically refer to a numbered listing could be problematic.  *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).  (holding that "failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand.").

Plaintiff argues that the ALJ failed to consider listings 2.07 and 4.05.  Under Listing 2.07 a person is presumptively disabled if he can demonstrate:

> Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B. Hearing loss established by audiometry.

20 C.F.R. Part 404, Subpart P, Appendix 1.

Medical records indicate that Plaintiff had frequent attacks of balance disturbance. (R. 143, 239).  There is also an indication that Plaintiff suffered from tinnitus (or ringing in the ears), (R. 239), and hearing loss.  (R. 188, 190, 249).  This diagnosis appears to be supported by vestibular tests (ENG) as well as audiometry.  (R. 190, 194).   Based on these findings, the ALJ was obligated to address Listing 2.07.

Plaintiff's second argument at Step three was that the ALJ failed to address Listing

4.05. That particular listing deals with a specific heart condition referred to as arrhythmia and reads as follows:

> Recurrent arrhythmias, not related to reversible causes such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled repeated episodes of cardiac syncope or near syncope and arrhythmia despite prescribed treatment (see 4.00A if there is no prescribed treatment), documented by resting or ambulatory (Holter) electrocardiography coincident with the occurrence of syncope or near syncope.

20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff's records indicate he suffers from an tachycardia, a form of arrhythmia. Additionally, Plaintiff has been diagnosed with neurocardiogenic syncope. Hence, Plaintiff appears to meet the requirements of Listing 4.05, which the ALJ failed to address.

The ALJ is required to "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion," so that the court can trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Because the ALJ's decision lacks any analysis of listings 2.07 or 4.05, the court cannot trace the path of the ALJ's reasoning at Step three. On remand, the ALJ must address these listings.

Additionally, the court notes that an individual may be disabled if his or her impairment meets or "substantially equals" one of the listings. 20 C.F.R. § 404.1526 explains that some impairments are not included in the listings, but the Social Security Administration will still consider the listed impairment most like that individual's impairment to determine if the impairment is substantially equal to the listing. In this

case, while orthostatic tachycardia syndrome does not appear in the listings, some of the symptoms attributable to it are very closely related to Listings 2.07 and 4.05.  Thus, even if the ALJ comes to the conclusion that Plaintiff does not meet either 2.07 or 4.05, the ALJ still must determine whether orthostatic tachycardia syndrome substantially equals either of those listings.

### C.     The Remaining Issues

In light of the court's determination that remand is necessary for the aforementioned reasons, the court declines to address Plaintiff's remaining arguments.

## V. Conclusion

The ALJ failed to address Plaintiff's diagnoses of orthostatic tachycardia syndrome and neurocardiogenic syncope in determining which of Plaintiff's impairments were "severe."  The ALJ also failed to articulate which listings he relied on in determining that Plaintiff was not disabled as well as why Plaintiff did not meet such listings.  Specifically, the ALJ failed to address Listings 2.07 and 4.05.  The ALJ's decision, is therefore **REMANDED** for further proceedings in accordance with this decision.

**It is so ordered** this 13th day of July 2005.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Eric Joseph Yocum
eric_yocum@msn.com